IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| PAIGE CARTER, Special Administrator of the ESTATE OF KEVIN C. CARTER, Deceased, | ) ) ) ) | Case No. 8:23-cv-485 |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| SCOTT FRAKES, Former Director of the Nebraska Department of Correctional Services, in his individual capacity; MICHELE WILHELM, Warden of Nebraska State Penitentiary, in her individual capacity; and JOHN/JANE DOES 1-6, all employees of Nebraska State Penitentiary, in their individual capacities, | ) ) ) ) ) ) ) ) ) ) ) ) ) | **COMPLAINT, JURY DEMAND AND REQUEST FOR PLACE OF TRIAL** |
| Defendants. | ) | |

COMES NOW Paige Carter, Special Administrator of the Estate of Kevin C. Carter, Deceased, by and through her counsel of record, and for her causes of action against Defendants, states as follows:

**JURISDICTION, VENUE and PARTIES**

1. This Court has jurisdiction pursuant to the provisions of 28 U.S.C. §§1331 and 1333 and 42 U.S.C. §1983.

2. Venue for this action is proper in the United States District Court for the District of Nebraska, because the acts and omissions complained of herein occurred in Lincoln, Lancaster County, Nebraska.

3. Plaintiff Paige Carter is the duly-appointed Special Administrator of the <u>Estate of Kevin C. Carter</u>, PR 23-862, Probate Court of Lancaster County, Nebraska, and is a resident of Pottawattamie County, Iowa.

1

4. Defendant Scott Frakes ("Frakes") was at all times relevant the Director of the Nebraska Department of Correctional Services ("NDCS"), and is now the former Director of the NDCS. He is sued in his individual capacity.

5. Defendant Michele Wilhelm ("Wilhelm") was, at all times relevant, the Warden of the Nebraska State Penitentiary ("NSP"). She is sued in her individual capacity.

6. Together, Wilhelm and Frakes were the policymakers and final decision-makers for NSP at all relevant times, and were responsible for articulating, training, and ensuring compliance with official and unofficial policies for the protection of inmates and any other person inside the secured area of the facility.

7. DOES 1-6 are and/or were at all relevant times employed by the Nebraska Department of Correctional Services as employees or contractors at NSP. Each of these Defendants is sued in their individual capacities.

8. All actions and inactions alleged herein were done under color of state law.

## BACKGROUND FACTS

9. On July 7, 2015, Angelo Bol ("Bol") entered the custody of NDCS.

10. Bol was in NDCS' custody after being arrested in Buffalo County, Nebraska on suspicion of First Degree Murder and Use of a Firearm to Commit a Felony.

11. Specifically, Bol waited in a parking lot for his former co-worker who he then shot a total of seven times, two of which were to the head while the co-worker laid on the ground.

12. He was charged under case State v. Bol, CR 15-2, in the District Court of Buffalo County, and he plead guilty to First Degree Murder on May 8, 2015.

13. On August 5, 2016, the Nebraska Supreme Court issued a Mandate upholding Bol's conviction on appeal in case S-15-706.

14. As of November 2020, Bol was at NSP serving a life sentence.

15. On December 18, 2019, Kevin C. Carter ("Carter") entered the custody of NDCS after being convicted of two charges, Terroristic Threats and Assault with a Deadly Weapon.

16. At the time, Carter was nineteen (19) years old, and he was sentenced to a combined total of six to nine years.

17. Based on his sentence and credit for time served, Carter's parole eligibility date was April 10, 2022.

18. Sometime on or before November 6, 2020, Carter and Bol were placed in the same cell in Housing Unit 2 at NSP.

19. On information and belief, prior to such time, Bol and Carter were evaluated by Defendant Does 5 and 6 to ascertain the risk of harm each posed to others, as well as the risk that each would be the victim of harm at the hands of other inmates.

20. Does 5 and 6 failed to exercise reasonable care in performing the diagnostic evaluation of both Carter and Bol, including failing to properly determine the threat of perpetrating violence and/or being the victim of violence.

21. The decision to place Carter and Bol in the same cell was made by Defendant Does 1 through 4, in their capacities as employees at NSP. Making decisions to double-bunk inmates was within the scope of the job duties and responsibilities of Does 1 through 4 at NSP.

22. In deciding to place Carter and Bol in the same cell, Does 1 through 4 failed to follow mandatory regulations, failed to consider the individual material and relevant factors about Carter and Bol, failed to consider the information available to them contained with the inmate files for Carter and Bol, failed to consider the threat to other inmates and risk of victimization for Carter and Bol, and took action and failed to act in other ways to be determined after discovery in this matter.

23. The actions and inactions on the part of Does 1 through 6 placed Carter at an unreasonable risk of harm at the hands of Bol.

24. The actions and inactions on the parts of Does 1 through 6 were conducted under the supervision of Defendants Warden Wilhelm and Director Frakes.

25. In their capacities as supervisors, policymakers and final decision-makers for NSP, Defendants Warden Wilhelm and Director Frakes failed to properly supervise and train Does 1 through 6.

26. Defendants Warden Wilhelm and Director Frakes were aware of instances in which inmates were double bunked with incompatible cell mates creating an unreasonable risk of harm, including but not limited to the death of Terry Berry.

27. In these instances, Defendants Warden Wilhelm and Director Frakes were aware that NDCS and NSP employees were not following safety guidelines provided by NDCS, including NAC 210.01 and other regulations to be established through discovery.

28. This failure to comply with safety regulations in the double bunking of inmates created a substantial risk of harm to double bunked inmates.

29. Further, Defendants Warden Wilhelm and Director Frakes were indifferent to said risk by failing to ensure additional or specific training regarding the decision to double bunk inmates.

30. Additionally, Defendants Warden Wilhelm and Director Frakes were indifferent to said risk by failing to provide and ensure additional supervision over the NSP and NDCS employees making these decisions, as well as providing proper supervision over the individual decisions pertaining to double bunking inmates.

31. Because they were aware of the substantial risk of harm, these conditions constitute deliberate or callous indifference to inmates' safety from assault at the hands of other inmates with whom they share a cell.

32. On November 6, 2020, NSP staff found Carter lying on the floor of his shared cell, unresponsive, with a sheet covering him.

33. He was pronounced dead that evening.

34. On or about May 27, 2021, a grand jury returned an indictment against Bol for Murder in the First Degree, alleging that on November 6, 2020, Bol "did kill Kevin C. Carter purposely and with deliberate and premeditated malice".

35. On June 28, 2022, the District Court of Lancaster County, Nebraska, where Bol was charged with Carter's death in State v. Bol, CR 21-535, determined that he was not at that time mentally competent to stand trial, but that there was a substantial likelihood he would become competent to stand trial in the foreseeable future.

36. On December 13, 2022, the District Court of Lancaster County again issued an Order stating that Bol was still not mentally competent to stand trial.

37. On May 4, 2023, Bol filed notice that he intended to rely on the defense of not guilty by reason of insanity, pursuant to Neb. Rev. Stat. § 29-2203.

38. On May 16, 2023, Bol was eventually deemed competent, and is presently waiting to stand trial.

## FIRST THEORY OF RECOVERY
## EIGHTH AMENDMENT PURSUANT TO 42 U.S.C. § 1983

39. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

40. When Carter was incarcerated under Defendants' supervision and custody, they were obligated to take reasonable measures to guarantee his safety and to protect him from violence at the hands of other inmates.

41. Defendants subjected Carter to a substantial risk of serious harm, *to wit*:

   a. Defendants' failure to properly examine, diagnose and assess Carter's and/or Bol's risk of assault and/or risk of being assaulted;

   b. Defendants' failure to consider, and/or willful ignorance of, Bol's substantial history of violent assault when assessing his compatibility with Carter;

   c. Defendants' failure to consider, and/or willful ignorance of, Bol's mental health issues and/or mental incompetency when assessing his compatibility with Carter;

   d. Defendants' failure to consider, and/or willful ignorance of, Carter's proximity to being released, and Bol's life sentence, when determining to bunk Carter with Bol;

   e. Defendants' decision to bunk Bol and Carter;

   f. Defendants' failure to staff NSP with enough personnel, including unit caseworkers, to provide observation of inmates to detect abnormalities, problems, or unrest, and the counseling of inmates in assisting them to adapt to the prison environment, including inmates Bol and Carter;

   g. Defendants Frakes's and Wilhelm's failure to adequately train, monitor and supervise NSP staff to ensure that proper administrative requirements and protocol were followed in housing decisions;

   h. Other acts and/or omissions to be determined at trial or other dispositive hearing.

42. Defendants had actual knowledge of each of these risks, but disregarded or acted with deliberate indifference to Carter's safety.

43. By the failures enumerated above, Defendants failed to act in good faith and without malice toward Carter's constitutional rights.

44. Based on the foregoing acts and/or omissions, Carter suffered physical, mental and emotional injury, to include the loss of his life.

45. The acts and omissions of Defendants in this case were so gross and culpable in nature that they constitute reckless indifference and wanton disregard for the law and for the lives and safety of others, including Carter.

46. As a result of Defendants' actions as alleged herein, Plaintiff has been required to retain the services of attorneys and is entitled to a reasonable amount for attorney's fees pursuant to 42 U.S.C. § 1988 for those violations covered by the Civil Rights Act.

47. Plaintiff requests that this matter be tried to a jury in Omaha, Nebraska.

WHEREFORE, Plaintiff requests the Court find that the Defendants herein were deliberately indifferent to the safety of Kevin C. Carter based on the foregoing allegations of acts and/or omissions; enter judgment in favor of the Plaintiff in the following amounts:

A. Compensatory damages in an amount to be proven at trial, for Carter's physical, emotional and mental injuries and pain and suffering;

B. Punitive damages to punish and deter the reprehensible conduct alleged in this Complaint;

C. Reasonable attorney's fees;

D. The costs of this action;

E. Additional damages as are proven at trial; and

F. Such other relief as this Court deems equitable and proper.

DATED November 1, 2023

    PAIGE CARTER, Special Administrator of the Estate of KEVIN C. CARTER, Deceased, Plaintiff

By: */s/ Thomas J. Monaghan*
Thomas J. Monaghan, #12874
Rodney C. Dahlquist, Jr., #23912
Dornan, Troia, Howard, Breitkreutz, Dahlquist & Klein PC LLO
1403 Farnam Street, Suite 232
Omaha, NE 68102
(402) 884-7044
(402) 884-7045 fax
Tom@dltlawyers.com
Rodney@dltlawyers.com
Attorneys for Plaintiff