IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PAIGE CARTER, Special Administrator of the ESTATE OF KEVEIN C. CARTER, Deceased,<br><br>        Plaintiff,<br><br>v.<br><br>SCOTT FRAKES, Former Director of the Nebraska Department of Correctional Services, in his individual capacity; MICHELE WILHELM, Warden of Nebraska State Penitentiary, in her individual capacity; DR. HARBANS DEOL, Former Medical Director for Nebraska Health Services, in his individual capacity; SHELBY BARRAGAN-LOPEZ, in her individual capacity; MICHAEL MCCANN, in his individual capacity; CHARICE TALLEY, in her individual capacity; JEFFERY REED, in his individual capacity; DOUGLAS HEMINGER, in his individual capacity; MATT HECKMAN, in his individual capacity; FRANKLIN HOWARD, in his individual capacity; KIM MCGILL, in her individual capacity; and JOHN/JANE DOES 1-6, all employees of Nebraska State Penitentiary, in their individual capacities,<br><br>        Defendants. | Case No: 8:23-cv-485<br><br><br>DEFENDANTS SCOTT FRAKES AND MICHELE WILHELM'S BRIEF IN SUPPORT OF MOTION TO DISMISS |

        Defendants Scott Frakes and Michelle Wilhelm, in their individual capacities hereby submit this brief in support of their Motion to Dismiss.

## INTRODUCTION

        On the face of the Complaint, Former Director Scott Frakes ("Frakes") and

Warden Michele Wilhelm ("Wilhelm") simply took no action and did not have sufficient knowledge of any activity that would allow plausible liability to lie against them under 42 U.S.C. § 1983 and U.S. Const. amend. VIII. Frakes and Wilhelm had no direct involvement in the decision to house Kevin Carter with Angelo Bol. Plaintiff does not allege that they did. Frakes and Wilhelm were not aware of any pattern of prison staff not following regulations regarding placement of inmates in double bunking.[1] Plaintiff does not allege that they were aware of any pattern of staff not following regulations, alleging only knowledge of "instance" of such behavior. No pattern is alleged. While Plaintiff makes multiple allegations regarding the prior criminal actions of Angelo Bol and Bol's mental health, Plaintiff makes no allegation that Frakes or Wilhelm had any knowledge, or reason to know, that Angelo Bol posed any particular risk in double bunking or being bunked with Carter. Plaintiff's Complaint simply does not allege any actions, or non-action, by Frakes or Wilhelm that would allow Plaintiff to recover against them under 42 U.S.C. § 1983.

## BACKGROUND AND FIRST AMENDED COMPLAINT

For the purposes of this Motion only, allegations from the First Amended Complaint ("FAC") are taken as true. Carter entered the custody of the Nebraska Department of Correctional Services ("NDCS") on December 18, 2019. Filing No. 19, CM/ECF at 3, ¶ 25. Frakes and Wilhelm

Frakes and Wilhelm were policy makers and supervisors for the Nebraska State Penitentiary ("NSP"). Filing No. 19, CM/ECF at 7, ¶ 57. They failed to properly

---

[1] Frakes and Wilhelm do not concede that any regulation was not followed.

supervise and train NSP staff. Filing No. 19, CM/ECF at 7, ¶ 58. They were aware of some situations in which incompatible inmates were double bunked that resulted in violence against an inmate. Filing No. 19, CM/ECF at 7, ¶ 59. They were aware that NSP staff double bunked incompatible inmates on certain "instances". *Id*. They were indifferent to NSP staff violating regulations and the potential threat to inmate safety it created. Filing No. 19, CM/ECF at 8, ¶¶ 70-73. However, the Complaint makes no allegation that Frakes or Wilhelm had any part in the decision to bunk Bol with Carter or knew of any pattern or practice of NSP staff in disregarding regulations on bunking inmates. *Moser v. Frakes*, et.al., No.8:18CV551 (D. Neb. July 17, 2029).

**STANDARD FOR A MOTION TO DISMISS FED.R.CIV PRO. 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Zink v. Lombardi*, 783 F.3d

1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 135 S. Ct. 2941 (2015).

"The complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative level.'" *McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555). The Court must accept factual allegations as true, but it is not required to accept any "legal conclusion couched as a factual allegation." *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 373 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 960 (Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 136 S. Ct. 804 (2016).

## ARGUMENT

**I.   Plaintiff fails to allege facts sufficient to demonstrate Frakes or Wilhelm were directly or personally involved in a constitutional violation.**

The Eighth Amendment to the United States Constitution proscribes the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The Supreme Court counsels that this amendment imposes upon prison officials the duty to "provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). That duty "requires those officials to take reasonable measures to 'protect prisoners from violence at the hands of other prisoners.'" *Jensen v. Clarke*, 73 F.3d 808, 810 (8th Cir. 1996) (quoting *Farmer*, 511 U.S. at 833) (internal quotation marks and citations omitted). However, "Prison officials do not commit a constitutional

violation every time one prisoner attacks another." *Young v. Selk*, 508 F.3d 868, 872 (8th Cir. 2007). "[N]ot . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for a victim's safety." *Farmer*, 511 U.S. at 834.

In order to state a claim pursuant to 42 U.S.C. § 1983, "a plaintiff must [allege] (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." *McDonald v. City of Saint Paul,* 679 F.3d 698, 704 (8th Cir. 2012). As such, a plaintiff must plead facts sufficient to demonstrate an individual defendant was *directly* and *personally* involved in an alleged constitutional violation. *Clemmons v. Armantrout,* 477 F.3d 962, 967 (8th Cir. 2007).

In order to maintain the 42 U.S.C. § 1983 claim against Frakes and Wilhelm, Plaintiff must allege facts that each had direct or personal involvement in a constitutional violation. The Complaint alleges Frakes and Wilhelm "were the policymakers and final decision-makers for NSP" and "failed to properly supervise and train" other Doe Defendants in double bunking. Filing No. 19, CM/ECF at 7, ¶¶ 58. Plaintiff makes no allegations that Frakes or Wilhelm ordered, directed, or even suggested that Carter and Bol be housed together. Thus, Frakes and Wilhelm's liability cannot be based upon direct participation of an alleged constitutional violation.

Further, to succeed in an Eighth Amendment failure-to-protect claim, inmates must make two showings. First, they must demonstrate that they are "incarcerated

under conditions posing a substantial risk of serious harm." *Jensen v. Clarke*, 73 F.3d 808, 810 (8th Cir. 1996) (quoting *Farmer,* 511 U.S. at 834). The second requirement concerns the state of mind of the prison official who is being sued. *Id*. It mandates that the plaintiff's show that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Farmer,* 511 U.S. at 837).

In this case, Plaintiff fails to allege facts to support the claim that Frakes or Wilhelm knew of and disregarded an excessive risk to Carter's safety. Specifically, Plaintiff failed to allege Frakes or Wilhelm knew Carter and Bol were even housed together. In the FAC, Plaintiff alleges that other Defendants were responsible for making the decision to house Carter and Bol together. Filing No. 19, CM/ECF at 3, ¶ 54. It follows that because neither Frakes nor Wilhelm were aware of the housing placement, it would have been impossible for Frakes and Wilhelm to have known of any substantial risk of serious harm to Carter.

Even accepting all of Plaintiff's factual allegations as true, Plaintiff failed to allege *direct* and *personal* involvement of Frakes or Wilhelm in the decision to house Carter and Bol together. Likewise, Plaintiff failed to allege facts suggesting Frakes and Wilhelm were aware of a substantial risk of harm to Carter and disregarded that risk. Accordingly, Plaintiff has failed to state a claim upon which relief can be granted against Frakes and Wilhelm.

## II. Plaintiff fails to allege facts supporting the claim that Frakes and Wilhelm are liable for failure to train or supervise.

Plaintiff's Complaint references "instances" of NDCS violating regulations in inmate placement. Plaintiff cites to a single incident. Filing No. 19, CM/ECF at 7, ¶59. However, the decision to place Carter and Bol together has nothing to do with the training or supervision of employees who would make that decision. Plaintiff's Complaint sets forth that NDCS staff did perform the required evaluation. Filing No. 19, CM/ECF at 6, ¶ 53. Still, Plaintiff asserts that Frakes and Wilhelm are liable for failure to train or supervise under § 1983. Filing No. 1, CM/ECF at 7, ¶¶ 58.

"A supervisor may be held liable 'if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights.'" *Perkins v. Hastings*, No. 17-2079, 2019 WL 469718, at *9 (8th Cir. Feb. 7, 2019) (quoting *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001)). The plaintiff must show that the supervisor "(1) had notice of a *pattern of unconstitutional acts* committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to [the plaintiff]." *Brewington v. Keener*, 902 F.3d 796, 803 (8th Cir. 2018) (emphasis added) (internal quotation marks omitted) (quoting *Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir. 2012)); *Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010).

In this case, however, Plaintiff fails to allege Frakes or Wilhelm were aware of any *pattern* of unconstitutional acts committed by subordinates or tacitly authorized any such acts. Plaintiff alleges that Frakes and Wilhelm were supervisors and policy makers and allege a single prior instance of alleged NDCS staff misconduct in failing

to follow regulations. Filing No. 19, CM/ECF at 3, ¶¶ 59.

Yet even accepting these factual allegations as true, nothing suggests Frakes or Wilhelm received notice of a pattern that inmates were being housed together in a manner which subjected them to a substantial risk of serious harm with respect to housing protocol decisions. A single prior instance does not create a pattern. This, in and of itself, does not constitute a constitutional violation. *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981). A pattern of unconstitutional behavior is created where the activity is so pervasive and widespread as to have the effect and force of law. *Brewington,* 902 F.3d at 801. In *Brewington*, the plaintiff was able to demonstrate only two prior instances of misconduct by subordinates. *Id.* at 802. Nor was there any evidence of action, whether direct or through policy decisions, of directing officers. *Id.* This, in the face of policies to the contrary, did not create a pattern of unconstitutional behavior by subordinates that could have created a 1983 liability in supervisors. *Id.* In the case at bar, Plaintiff alleges a single instance of prior possible misconduct and actions in contravention of NDCS policies by failing to properly evaluate Carter and Bol. Filing No. 19, CM/ECF at 7, ¶¶ 59. As such, the FAC fails on the very first element of supervisory liability: the Complaint fails to allege a pattern of unconstitutional acts committed by subordinates.

III. **Plaintiff fails to allege facts supporting the claim that Frakes and Wilhelm knew of, but deliberately disregarded a substantial risk of harm to Kevin Carter.**

With respect to Frakes and Wilhelm, the FAC alleges that they were deliberately indifferent to threats to inmate safety caused by assaults by other

inmates. Filing No. 19, CM/ECF at 8, ¶¶ 72-73. Plaintiff claims that Frakes and Wilhelm knew of but were deliberately indifferent to a substantial risk of harm when Carter and Bol were housed together. Generalized notice that prisons can be violent, overcrowded, and understaffed does not constitute the specific notice required to state a failure to protect claim pursuant to 42 U.S.C. § 1983. Plaintiff makes no allegation that Frakes or Wilhelm knew any specific information about Carter or Bol, or the decision to house them together.

To prevail on a failure-to-protect claim, an inmate must make two showings: "[1] an objective component, [that] there was a substantial risk of harm to the inmate, and [2] a subjective component, [that] the prison official was deliberately indifferent to *that risk*." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018) (emphasis added). As such, in order to state a claim in this case, Frakes and Wilhelm must have known there was a "substantial risk of harm" to Carter by housing him with Bol yet disregarded that particular risk. The Complaint makes no allegation that Frakes or Wilhelm knew anything related to Carter or Bols, or to Carter and Bol's placement together before November 6. 2020.

A.R. 210.01 details the process by which individuals in restrictive housing may share a single cell.[2] Despite the fact that NDCS has this regulation, Plaintiff somehow concludes that "Warden Wilhelm and Director Frakes where indifferent to

---

[2] Importantly, the FAC does not allege that Carter or Bol were in restrictive housing. Taken as true that A.R. 210.01 applies, it would constitute a higher level of consideration in inmate housing decisions than would be required by the allegations in the Complaint.

Page **9** of **12**

said risk by failing to provide and ensure additional supervision over" NDCS staff. Filing No. 1, CM/ECF at 4, ¶ 30. But the existence of A.R. 210.01(VIII) shows just the opposite. If anything, the fact A.R. 210.01(VIII) was a department-wide policy shows Frakes and Wilhelm were aware that a process was in place that accounted for compatibility and safety when determining if two inmates could be housed together.

Additionally, Plaintiff's own allegations set forth that staff members did, in fact, conduct a "compatibility assessment" as outlined in A.R. 210.01(VIII) for Carter and Bol. See Filing No. 19, CM/ECF at 6, ¶¶ 51.

> [A] prison official's violation of an internal regulation does not give rise to an Eighth Amendment claim of 'cruel and unusual punishment,' in the absence of objective evidence demonstrating that prison officials were deliberately indifferent to a prisoner's constitutional rights, either because they actually intended to deprive him of some right, or because they acted with reckless disregard of his right to be free from violent attacks by fellow inmates.

*Falls v. Nesbitt*, 966 F.2d 375, 380 (8th Cir. 1992). The FAC makes bare allegations that Frakes and Wilhelm were aware of and indifferent to NDCS staff not following regulations and the risk that such actions created. The FAC is devoid of any allegation regarding actual knowledge, let alone intent, about the placement of Carter with Bol. Without actual knowledge, or at least some knowledge of a *pattern-* neither a pattern nor knowledge of a pattern of violations of constitutional rights is alleged- Frakes and Wilhelm were not plausibly liable.

In sum, Plaintiff has failed to allege any facts supporting the allegation that Frakes and Wilhelm knew of, but were deliberately indifferent to a substantial risk of serious harm to Carter arising from his placement with Bol.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint against Former Director Scott Frakes and Warden Michele Wilhelm with prejudice.

DATED this 22nd day of February 2024.

**MICHELE WILHELM and SCOTT FRAKES, each in his or her individual capacity, Defendants.**

By: MICHAEL T. HILGERS, #24483
*Nebraska Attorney General*

By: */s/ Joseph Messineo*
Joseph Messineo, #21981
*Assistant Attorney General*

OFFICE OF THE ATTORNEY GENERAL
2115 State Capitol
Lincoln, Nebraska 68509
Phone: (402) 471-1901
Fax: (402) 471-4725
joseph.messineo@nebraska.gov
*Attorneys for Defendants.*

**CERTIFICATE OF COMPLIANCE**

Pursuant to NECivR 7.1(d), the undersigned hereby certifies that the foregoing principal brief contains 2918 words (including the caption, headings, footnotes, and quotations) in compliance with said rule. The undersigned utilized the word count function of Microsoft Word for Microsoft Office 365.

By: *s/ Joseph Messineo*
Joseph Messineo, #21981
*Assistant Attorney General*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 22, 2024, I electronically filed the foregoing document with the Clerk of the United States District Court for the District of Nebraska, causing notice of such filing to be served upon all parties registered on the CM/ECF system as follows:

Thomas J. Monaghan
Rodney C. Dahlquist, Jr.
Dornan, Troia, Howard, Breitkreutz,
Dahlquist & Klein PC LLO
1403 Farnam Street, Suite 232
Omaha, NE 68102

By: *s/ Joseph Messineo*
Joseph Messineo, #21981
*Assistant Attorney General*